UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE CONNECTICUT INDEMNITY
COMPANY,                                    CASE NO.: 04-cv-1044-T-24MSS

        Plaintiff(s),

v.

STANLEY PALIVODA,

        Defendant.
_____/

**PLAINTIFF THE CONNECTICUT INDEMNITY COMPANY'S
RESPONSE IN OPPOSITION TO DEFENDANT STANLEY PALIVODA'S
AMENDED MOTIONS TO STRIKE AND TO CHANGE VENUE**

Plaintiff the Connecticut Indemnity Company ("CIC") hereby responds in opposition to Defendant Stanley Palivoda's Amended Motion to Strike Counts II, IV and V of the Complaint pursuant to Fed. R. Civ. Proc. 12(f) and to Change Venue pursuant to 28 U.S.C.A. 1404(a). Both motions are without merit and should be denied.

Defendant contends that Counts IV and V should be stricken because they are duplicative of other counts. Defendant overlooks that each of the Counts assert a distinct claim that has been long recognized by the Federal Admiralty Law:

**Count I (Rescission)** – for rescission of the Policy of Marine Insurance issued by CIC to Defendant because Defendant breached the duty of *Uberrimae Fidei* implicit in each contract of Marine Insurance;

**Count II (Breach of Navigational Warranty)** – for breach of the <u>warranted navigational range, contained in the Taylor Hull Form</u> of the Policy, because Defendant operated the insured vessel outside the warranted navigational limit of the Policy;

**Count III (Deviation from Warranted Route)** – for Deviation from the <u>specified route</u> set forth in the Policy, because Defendant operated the insured vessel outside that route;

**Count IV (Breach of Navigational Warranty)** – for breach of the <u>warranted navigational range, contained in the Commercial Watercraft Endorsement</u> to the Policy, because Defendant operated the insured vessel outside that navigational range. This warranty is separate from the warranty contained in the Taylor Hull form, the violation of which is alleged in Count II;

**Count V – for Breach of the <u>Absolute Warranty of Seaworthiness</u>** for Defendant's failure to employ a licensed Captain, muster a competent crew or muster a full crew complement;

**Count VI – for Breach of the <u>Negative Implied Warranty of Seaworthiness</u>** for, *inter alia*, Defendant's: (1) failure to employ a licensed Captain; (2) failure muster a competent crew; (3) failure to muster a full crew complement; (4) operation of the insured vessel outside the warranted navigational limit; and (5) deviating from the warranted delivery route.

Defendant's Motion to Strike evidences a misunderstanding of the difference between the Breaches of Navigational Warranties to operate a vessel within a specified navigational range (Counts II and IV of the Complaint), and a Deviation from a specified route (Count III of the Complaint). These are separate concepts which afford CIC discrete defenses to Defendant's claim under the insurance policy issued by CIC.

Defendant also misunderstands the difference between the Absolute Warranty of Seaworthiness (Count V of the Complaint) and the Negative Implied Warranty of Seaworthiness (Count VI of the Complaint). These separate warranties support separate causes of action against Defendant.

Accordingly, Defendant's Motion to Strike must be denied *in toto*.

## COUNTERSTATEMENT OF FACTS

Defendant asked CIC for a Marine Hull Insurance policy on the 125 foot Paddlewheel vessel JUBILEE ("the Vessel") for a delivery trip from Stillwater, Minnesota to Potomac, Virginia. CIC agreed and issued Policy CVC 763589 to Defendant on the industry Taylor Hull form, with a Commercial Watercraft Endorsement. (Policy, Exhibit 1 to Complaint). During the

trip to Virginia, the Vessel sought to traverse across the middle of the Gulf of Mexico where it sank. Defendant submitted a claim to CIC under the Policy.

The Complaint pleads six counts, each alleging a distinct cause of action long recognized in Admiralty Jurisprudence. Count I seeks rescission of the Policy (Complaint, Count I); in the alternative, Counts II through VI seek a declaration that there is no coverage due to Defendant's Deviation and violation of a number of express and implied warranties.

The Policy provided coverage for the Vessel for a specified Delivery Voyage from Stillwater, Minnesota to Potomac, Virginia, along a specified route set forth in the Policy. (CIC Policy, Exhibit 1 to the Complaint, Commercial Watercraft Endorsement). Defendant specifically requested coverage for this particular delivery route.

CIC contends that the Policy should be rescinded because Defendant breached the duty of *Uberrimae Fidei* implicit in all contracts of Marine Insurance due to his misrepresentations and/or omissions when applying to CIC for the Policy. (Complaint, Count I).

In the alternative, CIC contends that Defendant's claim is not covered because: (1) Defendant operated the Vessel outside the navigational limit of the Policy; (2) Defendant deviated from the specified delivery route set forth in the Policy; and (3) Defendant breached the Absolute Warranty of Seaworthiness and the Negative Implied Warranty of Seaworthiness. (Complaint, Counts II through VI).

## POINT I

### DEFENDANT BEARS A HEAVY BURDEN
### TO BE ENTITLED TO RELIEF UNDER FED. R. CIV. PROC. 12(F)

Defendant moves to strike Counts II, IV and V of the Complaint pursuant to Fed. R. Civ. Proc. 12(f), which provides:

> Upon motion made by a party before responding to a pleading, . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Rule 12(f) motions are disfavored in this Circuit. As one District Court has stated:

> Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process. *See 2A Moore's Federal Practice*, P 12.21, p. 2419. ***Motions to strike are generally viewed with disfavor and 'often considered time wasters.'*** *See Tingley Systems, Inc. v. Bay State HMO Management, Inc.*, 833 F. Supp. 882, 884 (M.D. Fl. 1993). **Unless it is clear that the matters stricken have no possible relationship to the controversy and may prejudice the other party, motions to strike are usually denied.** *See Augustus v Board of Public Instruction*, 306 F.2d 862, 869 (5th Cir. 1962).

*McNair v. Monsanto Co.,* 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003) (emphasis added); *see also In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999) ("Motions to strike pleadings are generally disfavored, and will be granted only when the paragraph has 'no possible relation to the controversy.'") (citing *Carlson Corp. v. School Board of Seminole County*, 778 F.Supp. 518, 519 (M.D. Fla. 1991)). Defendant falls far short of meeting the rigorous requirements of Rule 12(f).

## POINT II

### COUNT II OF THE COMPLAINT ALLEGES BREACH OF NAVIGATIONAL WARRANTY

Count II of the Complaint asserts that Defendant breached the Navigational Warranty in the Policy by operating the Vessel outside of the Policy navigational limits. Defendant's contention that Count II should be stricken because the Policy "does not contain the alleged navigational warranty" is simply wrong. (Def. Motion to Strike, ¶ 1).

Contrary to Defendant's contention, the plain language of the Policy contains a navigational warranty. Count II of the Complaint alleges that Defendant breached the

navigational warranty contained in the Taylor Hull form of the Policy by operating the Vessel outside of the navigational range of the Policy. (Complaint, Count II, ¶¶ 43-45). Contrary to Defendant's contention, the Taylor Form of the Policy contains an express navigational warranty. The Policy Taylor Form unambiguously states that:

> ***any deviation beyond the navigation limits*** provided herein ***shall void this policy***; but on the return of the vessel in a seaworthy condition, within the limits herein provided, this policy shall reattach and continue in full force and effect, but in no case beyond the termination of this policy.

(Policy, Exhibit A to Complaint, Lines 142-144). The "navigational limits" of the Policy are unambiguously set forth in the Commercial Watercraft Endorsement which specifies the following warranty:

> ***It is warranted*** that the insured vessel shall be engaged in the business of: A DELIVERY TRIP
>
> and coverage shall not be provided for any other activity unless endorsed hereon.
>
> **Navigation Area:** LEAVING STILLWATER, MN GOING DOWN MISSISSIPPI RIVER, CONNECTING TO THE OHIO RIVER, TENNESSEE RIVER INLAND WATERWAY AROUND GULF OF MEXICO TO OKEECHOBEE CANAL INLAND WATERWAY ACROSS FLORIDA TO POTOMAC, VA.

(Policy, Exhibit A, Commercial Watercraft Endorsement) (emphasis added).

The Policy specifies the navigational range of bodies of water within which the Vessel may operate. CIC's alleges that Defendant operated the Vessel outside that navigational range, violating the navigational warranty of the Taylor Hull form and forfeiting coverage for the claim.

Accordingly, the Court should deny Defendant's motion to strike Count II.

CASE NO.: 04-cv-1044-T-24MSS

# POINT III

### COUNT III ALLEGES DEVIATION FROM THE WARRANTED ROUTE; COUNT IV ALLEGES BREACH OF WARRANTY. THEY ARE NOT DUPLICATIVE

Defendant contends that Count IV, alleging breach of the navigational warranty in the Policy's Commercial Watercraft Endorsement is duplicative of Count III, which alleges a Deviation from the warranted route set forth in the Endorsement. This argument belies a lack of familiarity with the Admiralty Law. Defendant confuses the distinction between two separate and well-established doctrines. Deviation from Warranted Route (Count III) pertains to deviation from a *route* specified in the Policy; Breach of Navigational Warranty (Count IV) pertains to operation of the Vessel outside of the *navigational range* of bodies of water stated in the Policy. Count IV is not, as Defendant contends, duplicative of Count III.

The Deviation claim (Count III) and the Breach of Navigational Warranty claim (Count IV) assert separate legal theories based upon the following Policy language in the Commercial Watercraft Endorsement:

> *It is warranted* that the insured vessel shall be engaged in the business of: A DELIVERY TRIP
>
> and coverage shall not be provided for any other activity unless endorsed hereon.
>
> **Navigation Area:** LEAVING STILLWATER, MN GOING DOWN MISSISSIPPI RIVER, CONNECTING TO THE OHIO RIVER, TENNESSEE RIVER INLAND WATERWAY AROUND GULF OF MEXICO TO OKEECHOBEE CANAL INLAND WATERWAY ACROSS FLORIDA TO POTOMAC, VA.

(Policy, Exhibit A, Commercial Watercraft Endorsement) (emphasis original).

Count III in CIC's Complaint alleges that Defendant navigated a route different from that specified. This is CIC's Deviation claim (Count III). CIC's Breach of Navigation Warranty

claim (Count IV) is based upon the Vessel's navigation outside the bodies of water agreed to in the Watercraft Endorsement.

Count III states a claim for Deviation from the Warranted Route - - a claim which has long been recognized by federal courts in the area of Marine Insurance. For example, in *The Citta Di Messina*, 169 F. 472 (S.D.N.Y. 1909), where no specific route was stated in the policy, the Court held:

> '[D]eviation' is a term of art, belonging in the main to the law of marine insurance, and to be interpreted by that law . . .
>
> If an insured shipowner fails to pursue that course of navigation which experience and usage have prescribed as the safest and most expeditious mode of proceeding from one voyage terminus to the other, he violated a tacit but universally implied condition of the contract between himself and his underwriter, who is therefore freed from liability for loss subsequent to deviation because the assured has enhanced or varied the risks insured against.

*Citta Di Messina*, 169 F. at 474.

Where, as in the CIC Commercial Watercraft Endorsement, the policy states a specific route which the insured Vessel must follow on a voyage, the insurer has no further obligation to the insured after the Deviation occurs. The United States Supreme Court has held that, where a Marine Insurance Policy, like CIC's Policy, is issued:

> for a voyage, there is an implied warranty that no *different* voyage will be undertaken.

*Calmar S.S. Corp. v. Scott*, 73 S.Ct. 739, 746, 345 U.S. 427, 440, 97 L.Ed. 1125 (1953) (emphasis added). Several authorities on Marine Insurance confirm this:

> When a vessel, without lawful excuse, deviates from the voyage contemplated by the policy, the insurer is discharged from any liability as from the time of deviation even though the vessel may have regained her route before the loss occurs.

Leslie J. Buglass, MARINE INSURANCE AND GENERAL AVERAGE IN THE UNITED STATES, p. 48 (3d Edition, 1991).

> A 'deviation' within the meaning of marine insurance is a voluntary departure, without necessity or justifiable cause, from the regular and usual course of the voyage. Such a departure discharges the insurer, regardless of whether the degree or period of the risk is increased. The warranty as to deviation applies to voyages on inland rivers, and it applies to an insurance on the cargo as well as on the vessel.

44 AM. JUR. 2D INSURANCE § 1309 (2d Ed. 2003).

> The extent of the deviation has no bearing on its effect. It is immaterial whether the deviation is trivial or extensive. The deviation will not be cured even if the ship returned to her proper course before any loss occurred. Nor need the insurer prove a connection between the deviation and the loss. It is enough that the policy has been avoided by the variation of the risk which the deviation introduced . . . . Where the voyage is described or defined in the policy with any detail, the vessel must follow the route specified, even though it may be one not customarily taken by shipping.

E.R. Hardy Ivamy, MARINE INSURANCE, p. 129 (4th Ed. 1985).

Here, the Policy was issued to cover the vessel during a voyage on a specified route from Stillwater, Minnesota to deliver the Vessel in Potomac, Virginia. Defendant's failure to follow the specified route states a claim for Deviation.

Count IV asserts, in the alternative, a breach of an express policy warranty based upon the Navigational Area set forth in the Commercial Watercraft Endorsement. If the Court finds that the Watercraft Endorsement is not a requirement that Defendant follow a specific route (as alleged in the Deviation claim), the Endorsement must be construed to create a warranty that the Vessel is insured only when operated within the specific "Navigational Area" set forth in the

Endorsement. Defendant's failure to operate the Vessel within that navigational area is a breach of the warranty.

Count III and Count IV are not duplicative. Rather they are merely alternative causes of action based upon the Policy's Watercraft Endorsement. The Court should deny Defendant's Motion to Strike Count IV.

In the event the Court feels the distinction between Count III and IV is unclear, CIC should be granted leave to amend.

## POINT IV

### COUNT V FOR BREACH OF THE ABSOLUTE WARRANTY OF SEAWORTHINESS IS DISTINCT FROM COUNT VI FOR BREACH OF THE NEGATIVE IMPLIED WARRANTY OF SEAWORTHINESS

Defendant ignores over a century of well settled law recognizing both the Absolute Warranty of Seaworthiness and the Negative Implied Warranty of Seaworthiness in Marine Insurance. The suggestion that Counts V and VI are duplicative is flat out wrong.

> "[U]nder federal admiralty law, there are ***two separate warranties*** of seaworthiness implied in time hull insurance contracts -- ***the absolute implied warranty of seaworthiness and the negative implied warranty.***"

*Continental Ins. Co. v. Lone Eagle Shipping*, 952 F. Supp. 1046, 1067 (S.D.N.Y., 1997), *aff'd*, 134 F.3d 103 (2d Cir. 1998) (emphasis added). The Court of Appeals for the Fifth Circuit has also confirmed this distinction:

> [F]ederal maritime law ***implies two warranties of seaworthiness*** in a time hull insurance policy. The first of these warranties--the implied warranty of seaworthiness at the inception of the policy--is absolute in nature. The second one, which applies only after the policy attaches, is a modified, negative warranty, under which the insured promises not to knowingly send a vessel to sea in an unseaworthy condition. Although the second implied warranty of seaworthiness requires knowledge on the part of the insured, the

> first does not. The insured breaches this first warranty if the vessel
> is in fact unseaworthy when the policy becomes effective.

*Employers Ins. v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1431-32 (5th Cir. 1992) (emphasis added).

The claims asserted in Count V and Count VI are separate and distinct claims. Defendant's assertion that Count V should be stricken as duplicative of Count VI should be denied.

### POINT V

### DEFENDANT'S REQUEST TO STRIKE CIC'S PRAYER FOR COSTS AND FEES SHOULD BE DENIED BECAUSE IT IS NOT PROPERLY THE SUBJECT OF A MOTION PURSUANT TO RULE 12(F) AND IS PREMATURE

Defendant moves to strike CIC's prayer for attorney's fees and costs pursuant to Fed. R. Civ. Proc. 12(f). This is not properly the subject of a motion under Rule 12(f). Rule 12(f) only permits the Court to strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . ." Federal courts have held that Rule 12(f) does not authorize the Court to strike a demand for attorney's fees:

> The inclusion of claims for attorneys' fees in the Complaint does not constitute an 'insufficient defense or any redundant, immaterial, impertinent, or scandalous matter' such that a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) is proper."

*Cardinale v. La Petite Academy, Inc.*, 207 F.Supp.2d 1158, 1163 (D. Nev. 2002). The Court, therefore, should deny Defendant's motion to strike CIC's prayer for attorney's fees and costs.

Furthermore, such a motion is premature, as Florida law permits an award of costs to the prevailing party. See Florida Statues Annotated 57.041.

CASE NO.: 04-cv-1044-T-24MSS

## POINT VI

## DEFENDANT'S MOTION TO CHANGE VENUE MUST BE DENIED

Defendant has also moved pursuant to 28 U.S.C. § 1404(a) to transfer venue for the convenience of the parties and witnesses to the Eastern District of Virginia. Defendant's motion is procedurally and substantially deficient and must be denied.

**A. DEFENDANT'S MOTION IS IMPROPERLY BEFORE THE COURT UNDER 28 U.S.C. § 1404.**

CIC seeks a declaration that it is not obligated to Defendant under the Policy. It is well established that a case involving Marine Insurance is within the Admiralty Jurisdiction of the federal courts. As the Court of Appeals for the Eleventh Circuit has held:

> a dispute arising under a contract of maritime insurance. . . is within the admiralty and maritime jurisdiction of the district court.

*Morewitz v. West of England Ship Owners Mut. Prot. and Indem. Ass'n*, 62 F.3d 1356, 1364 (11th Cir. 1995); *see also Yu v. Albany Ins. Co.,* 281 F.3d 803, 806 (9th Cir. 2002) ("The district court had jurisdiction in admiralty over this case of marine insurance"); *New York Marine & General Ins. Co. v. Tradeline L.L.C.*, 266 F.3d 112, 121 (2d Cir. 2001) ("Federal admiralty jurisdiction extends to cases involving marine insurance contracts.").

It is equally well settled that:

> When a motion to transfer is filed in an action in admiralty, ***Supplemental Rule F(9) applies, rather than 28 U.S.C. § 1404(a).***

*In re Complaint of Norfolk Dredging Co.,* 240 F.Supp.2d 532, 534 (E.D. Va. 2002) (*citing In re U.S. Coast Guard Vessel*, 221 F.Supp. 163, 165 (D.N.H. 1963)). Because Defendant has improperly moved under 28 U.S.C. § 1404(a), the Court should deny Defendant's motion.

**B. DEFENDANT HAS NOT ESTABLISHED THAT THE EASTERN DISTRICT OF VIRGINIA IS A MORE CONVENIENT FORUM THAN THE MIDDLE DISTRICT OF FLORIDA.**

Even if Defendant's motion was properly before the Court pursuant to 28 U.S.C. 1404(a), Defendant falls far short of establishing that venue should be transferred to the Eastern District of Virginia. Defendant admits that venue is proper in the Middle District of Florida. (See Defendant's Answer, ¶ 6). Defendant seeks to transfer venue for the convenience of the parties and witnesses.

1. **Defendant's Burden is Heavy and Must be Satisfied by Clear Cut and Convincing Evidence.**

Courts in this Circuit hold that a defendant bears a heavy burden to establish that venue should be transferred on grounds of convenience:

> '[a] discretionary transfer under 28 U.S.C. § 1404(a) will not be granted absent a ***clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court***.' *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 759 (S.D.N.Y. 1980) (*quoting General State Authority of Pennsylvania v. Aetna Casualty and Surety Co.*, 314 F. Supp. 422, 423 (S.D.N.Y. 1970). The burden is on the defendant, when it is the moving party, to establish that there should be a change of forum. Unless the balance ***strongly favors the defendant***, plaintiff's choice of forum will rarely be disturbed. *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 341 (8th Cir. 1983). Thus, '***in the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative.***' *NTN Bearing Corp. v. Charles E. Scott, Inc.*, 557 F. Supp. 1273, 1279 (N.D. Ill. 1983).

*J.I. Kislak Mortg. Corp. v. Connecticut Bank & Trust Co., N.A.*, 604 F. Supp. 346, 347-348 (S.D. Fla. 1985) (emphasis added); *see also See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (holding that plaintiff's choice of forum should not be disturbed unless it is "clearly outweighed" by other considerations).

2. **Defendant Has Not Shown that the Eastern District of Virginia is a More Convenient Venue.**

In support of his motion, Defendant simply states in vague and conclusory terms that venue should be transferred for the convenience of Defendant and some (but not all) witnesses. (Def. Supporting Legal Memo, ¶ 3). This conclusory assertion is insufficient to sustain Defendant's burden. In *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001), the Court held:

> Defendants moving for transfer have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum. *See McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 345 (D.R.I. 1994).

With respect to a motion to transfer for the convenience of witnesses, the Court held:

> when considering this factor, it is not so much the convenience of the witnesses but the possibility of having their testimony at the trial that is important. (citation omitted). Thus, transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party. ***It may also be denied where the movant does not show that the witnesses would be unwilling to testify and that compulsory process would be necessary.*** *See J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust Co., N.A.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985).
>
> Furthermore, motions to transfer are not determined solely upon the outcome of a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts in which each party would like to try the case. ***The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony.*** See forum. *See McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 345 (D.R.I. 1994); *J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust Co.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985). Finally, the factor of witness convenience and availability does not stand alone, and must be weighed against other relevant factors."

*Mason*, 146 F. Supp. 2d at 1361-1362 (emphasis added).

Defendant's motion merely states that his insurance broker and members of the Vessel crew would be inconvenienced if this matter remains in the Middle District of Florida. (Def. Supporting Legal Memo, ¶ 3). Defendant has made no attempt: (1) to demonstrate that these witnesses would be unwilling to testify at trial in Florida and that compulsory process would be necessary; or (2) to describe with particularity the significance of these witnesses' testimony. Indeed, the members of the crew, identified by Defendant as inconvenienced witnesses, were acquaintances of the Defendant and could well appear at trial without compulsory process. In sum, Defendant's mere recitation of a list of witnesses outside of Florida is insufficient, as a matter of law, to justify transferring this case to the Eastern District of Virginia. *See Mason*, 146 F. Supp. 2d at 1362-63 (denying motion to transfer where Defendant did not suggest that witnesses would need to be compelled to appear in forum chosen by Plaintiff and did not discuss in detail the witnesses' testimony); *J.I. Kislak Mortgage Corp.*, 604 F. Supp. at 348 (same).

Further, there is much evidence that the Middle District of Florida is a more convenient venue. First, the Vessel sunk in the Gulf of Mexico, 72 miles from the Florida coast and within this District. (Complaint, ¶ 32). Second, the Coast Guard personnel who rescued Defendant and the crew from the sinking Vessel were dispatched from Tampa, Florida - - within this District. Other Coast Guard personnel who received a distress call from the Vessel are located in Panama City, Florida. While Defendant has offered to "stipulate with the Plaintiff to the accuracy and materiality of the records of the United States Coast Guard relating to the towing and sinking of the Vessel", CIC nonetheless intends to depose these Coast Guard witnesses and, if necessary, call them at trial. These witnesses are important to CIC's Deviation and Breach of Navigational Warranty claims. It would decidedly inconvenient for these Coast Guard witnesses, stationed in Florida, to leave their posts to attend trial in the Eastern District of Virginia.

CASE NO.: 04-cv-1044-T-24MSS

Finally, Defendant's application mentions in passing that the Vessel's captain, Tim Sherin, resides outside of the Eastern District of Virginia. It is no more convenient for Captain Sherin to appear for trial in the Eastern District of Virginia, than in the Middle District of Florida.

For these reasons, Defendant has failed to satisfy his burden to demonstrate that the Eastern District of Virginia is a more convenient venue for this action than the Middle District of Florida. Accordingly, Defendants' Motion to Change Venue should be denied.

Respectfully submitted,

| | |
|---|---|
| /s James W. Carbin | /s James A. Weinkle |
| James W. Carbin | James A. Weinkle |
| Admitted Pro Hac Vice | Florida Bar No. 710891 |
| Attorneys for Plaintiff | Attorneys for Plaintiff |
| DUANE MORRIS LLP | DUANE MORRIS LLP |
| A Delaware Limited Liability Partnership | Wachovia Financial Center, Suite 3400 |
| 744 Broad Street, Suite 1200 | 200 South Biscayne Blvd. |
| Newark, New Jersey 07102-3889 | Miami, Florida 33131 |
| Telephone: 973.424-2000 | Telephone: 305.960-2200 |
| Facsimile: 973.424-2001 | Facsimile:   305.960-2201 |
| JWCarbin@duanemorris.com | JAWeinkle@duanemorris.com |

CASE NO.: 04-cv-1044-T-24MSS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 15, 2004, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: D. James Kadyk, Esquire and David J. Kadyk, Esq., Smith Clark Delesie Bierley Mueller & Kadyk, P.A., 100 North Tampa, Box 2939, Tampa, Florida 33601 **and** I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail on this 15th day of July, 2004, to D. James Kadyk, Esquire and David J. Kadyk, Esquire of the law firm of Smith, Clarke, Delesie, Bierley, Mueller & Kadyk, PO Box 2939, Tampa, FL 33601, attorneys for Defendant Stanley Palivoda.

By:   s/James A. Weinkle

MIA\132947.1