UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE CONNECTICUT INDEMNITY
COMPANY,

    Plaintiff,

v.                                            Case No. 8:04-cv-1044-T-24MSS

STANLEY PALIVODA,

    Defendant.
_____/

## ORDER

This cause comes before the Court on two motions: (1) Plaintiff's Motion for Summary Judgment (Doc. No. 49) and (2) Defendant's Motion for Summary Judgment (Doc. No. 48). Both motions are opposed. (Doc. No. 50, 51). A hearing on the motions was held on July 21, 2005.

## I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325.

When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324. In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

## II. Background[1]

In 2003, Defendant purchased the paddlewheel vessel JUBILEE, which was located in Stillwater, Minnesota. (Doc. No. 49, Ex. A, p. 30). The JUBILEE was over eighty-three feet long, with a beam of twenty-four feet, a draft of thirty inches, and a speed of roughly six knots. (Doc. No. 49, Ex. A, p. 81; Doc. No. 48, Ex. C).

Defendant's marine experience prior to purchasing the JUBILEE was limited to operating small pleasure crafts in inland waterways, such as the Potomac River and Chesapeake Bay. (Doc. No. 49, Ex. A, p. 8-17, 31). Defendant did not hold a boating license, nor did he have experience piloting a paddlewheel boat. (Doc. No. 49, Ex. A, p. 18, 83).

Defendant needed to deliver the JUBILEE to his home in Virginia, so he hired Captain Tim Sherrin to pilot the vessel. (Doc. No. 49, Ex. A, p. 61-62). Sherrin worked as captain of the JUBILEE for the prior owner, and he had experience traveling the Gulf of Mexico. (Doc. No. 49, Ex. B, p. 14-15, 33-34). Sherrin was previously in the U.S. Navy and had over twenty years of experience in the marine industry. (Doc. No. 49, Ex. B, p. 61).

---

[1]The Court is construing the facts in the light most favorable to Defendant.

Defendant needed insurance for the delivery trip. Defendant obtained insurance from Plaintiff CIC, and the following route is set forth in the insurance policy:

> LEAVING STILLWATER, MN GOING DOWN MISSISSIPPI RIVER, CONNECTING TO THE OHIO RIVER, TENNESSEE RIVER INLAND WATERWAY AROUND GULF OF MEXICO TO OKEECHOBEE CANAL INLAND WATERWAY ACROSS FLORIDA TO POTOMAC, VA. (HOMEPORT).[2]

(Doc. No. 49, Ex. C). The policy also provided that "[a]ny deviation beyond the navigation limits provided herein shall void this policy." (Doc. No. 49, Ex. C).

The JUBILEE had a U.S. Coast Guard Certificate of Inspection ("COI"). (Doc. No. 49, Ex. A, p. 42). The COI states that the routes permitted for the vessel are rivers and not more than one mile from the shore. (Doc. No. 49, Ex. D).

Defendant requested a copy of Sherrin's license before the delivery trip, but Sherrin did not produce it before they left on the delivery trip. (Doc. No. 49, Ex. A, p. 63-64). During the delivery trip, Sherrin realized that his licensed had expired, although it is disputed as to whether Sherrin told Defendant this during the trip. (Doc. No. 49, Ex. B, p. 80, 96-97; Ex. A, p. 62-63).

When the JUBILEE arrived in Apalachicola, Florida, Defendant checked the weather forecast. (Doc. No. 49, Ex. A, p. 130). The weather forecast indicated that there would be good weather for twenty-four hours. (Doc. No. 49, Ex. A, p. 133-134). At this point, Defendant and Sherrin disagreed about what route to take. Sherrin insisted that they travel the TV route, which runs along the shoreline of the Gulf of Mexico. (Doc. No. 49, Ex. B, p. 18, 20, 37-39). Defendant rejected Sherrin's recommendation and instead decided to sail across the Gulf of Mexico. (Doc. No. 49, Ex. B, p. 39-40). The JUBILEE sank on December 3, 2003,

---

[2]Defendant provided the route that is contained in the insurance policy. (Doc. No. 49, Ex. A, p.51-52, 57-58).

3

approximately seventy miles out in the Gulf of Mexico.  (Doc. No. 49, Ex. A, p. 148; Ex. B, p. 47).

Thereafter, Defendant filed a claim under the insurance policy, which Plaintiff denied. Plaintiff filed suit for a declaratory judgment that the policy was void and that Plaintiff had no duty to Defendant for his claim. Plaintiff asserts six claims: recision of the insurance policy, two claims of breach of navigational warranty, deviation from warranted route, breach of absolute warranty of seaworthiness, and breach of the negative implied warranty of seaworthiness.  In response, Defendant filed a counterclaim for damages under the insurance policy.

### III.  Plaintiff's Motion for Summary Judgment

Plaintiff argues that there is no coverage under the policy, and as such, Plaintiff is entitled to summary judgment on its claims against Defendant, because (1) the JUBILEE deviated from its defined route, (2) Defendant breached the navigational warranty contained in the policy, (3) Defendant breached the absolute warranty of seaworthiness, and (4) Defendant breached the negative implied warranty of seaworthiness.  For the reasons stated below, the Court agrees and finds that Plaintiff is entitled to summary judgment.

#### A.  Navigational Warranty

Plaintiff argues that there is no coverage under the insurance policy, because Defendant breached the navigational warranty contained in the policy.  The navigation area described in the policy was the following:

> LEAVING STILLWATER, MN GOING DOWN MISSISSIPPI RIVER, CONNECTING TO THE OHIO RIVER, TENNESSEE RIVER INLAND WATERWAY AROUND GULF OF MEXICO TO OKEECHOBEE CANAL INLAND WATERWAY ACROSS FLORIDA TO POTOMAC, VA. (HOMEPORT).

4

(Doc. No. 49, Ex. C). The policy also provided that "[a]ny deviation beyond the navigation limits provided herein shall void this policy." (Doc. No. 49, Ex. C). Plaintiff argues that since the JUBILEE traveled across the Gulf of Mexico, rather than following the inland waterway around the Gulf of Mexico, Defendant breached the navigation warranty.

Plaintiff is correct that if a vessel travels outside of the navigational limits set forth in an insurance policy and sinks while outside the navigational limits, the insurer is relieved from liability for the loss of the vessel. See Port Lynch, Inc. v. New England International Assurety of America, Inc., 754 F. Supp. 816, 823 (W.D. Wash. 1991)(citations omitted); see also Lexington Ins. Co. v. Cooke's Seafood, 835 F.2d 1364, 1366 (11th Cir. 1988); La Reunion Francaise v. Christy, 122 F. Supp.2d 1325, 1332 (M.D. Fla. 1999). Defendant contends, however, that there is no inland waterway around the Gulf of Mexico after a vessel leaves Apalachicola, Florida until the vessel reaches Tampa, Florida, and as such, Defendant contends that the JUBILEE did not breach the navigational warranty. The Court rejects Defendant's argument.

The inland waterway around the Gulf of Mexico is called the Gulf Intracoastal Waterway.[3] Florida's Department of Transportation's website describes the Gulf Intracoastal Waterway as follows:

> Between the Caloosahatchee River 148 miles north to the Anclote River, a chain of inlets and passes between barrier islands provides a relatively protected "inside passage" of the Gulf Coast waterway system. From the Anclote River North, however, the Waterway is fully exposed to the open waters of the Gulf of Mexico.

DOT website, Ex. 3-2 on page 3-5. The Gulf Intracoastal Waterway was the route that was set forth in the insurance policy, since it is the waterway around the Gulf of Mexico. This is the

---

[3]See Department of Transportation Website ("DOT website"):
http://www.dot.state.fl.us/publictransportation/Documents/WaterwayStudy/ch03.pdf

route that Sherrin recommended that they take when they reached Apalachicola. However, Defendant rejected Sherrin's recommendation and instead decided to travel across the Gulf of Mexico, wherein the vessel sank seventy miles from the shore. Clearly, Defendant did not travel around the Gulf of Mexico, as required by the insurance policy, and as result, the Court finds that Defendant breached the navigational warranty contained in the policy. Accordingly, the Court grants summary judgment in favor of Plaintiff on its breach of navigational warranty claims (Counts II, IV).

### B.  Deviation

Plaintiff also contends that there is no coverage under the insurance policy, because the JUBILEE deviated from its defined route. "A 'deviation' within the meaning of marine insurance is a voluntary departure, without necessity or justifiable cause, from the regular and usual course of the voyage." 44 Am. Jur.2d Insurance § 1309; see also The Citta di Messina,169 F. 472, 476 (S.D.N.Y. 1909). Furthermore, if an insured deviates during a voyage, "he violates a tacit but universally implied condition of the contract between himself and his underwriter, who is therefore freed from liability for loss subsequent to deviation because the [insured] has enhanced or varied the risks insured against." The Citta di Messina, 169 F. at 475 (citations omitted).

Plaintiff contends that Defendant deviated from the route set forth in the insurance policy by going across the Gulf of Mexico rather than going around it. For the reasons stated above regarding Defendant's breach of the navigational warranty, the Court finds that Defendant deviated from its defined route. Accordingly, the Court grants summary judgment in favor of Plaintiff on its deviation claim (Count III).

### C. Absolute Warranty of Seaworthiness

Plaintiff also argues that Defendant breached the absolute warranty of seaworthiness. Federal maritime law implies the absolute warranty of seaworthiness into marine insurance policies. Employers Ins. of Wausau v. Occidental Petroleum Corp., 978 F.2d 1422, 1431 (5th Cir. 1992). An insured breaches the absolute warranty of seaworthiness if the vessel is in fact unseaworthy when the insurance policy becomes effective, even if the insured does not know that the vessel is unseaworthy. Id. at 1432.

Plaintiff contends that Defendant breached the absolute warranty of seaworthiness, because the JUBILEE was not competently crewed, since the crew was not qualified.[4] The Court notes that a shipowner has a duty to provide a competent crew, and as such, unseaworthiness can be caused by insufficient manning of the vessel or manning the vessel with an incompetent crew. See Hercules Carriers, Inc. v. Claimant State of Florida, Department of Transportation, 768 F.2d 1558, 1565-66 (11th Cir. 1985)(citation omitted); A.R. Lantz Co., Inc. v. United Trans-Caribbean, 1987 U.S. Dist. LEXIS 14566, at *36 (S.D. Fla. June 26, 1987)(citation omitted); Acadia Ins. Co. v. Allied Marine Transport LLC, 151 F. Supp.2d 107, 118 (D. Maine 2001).

In determining whether the crew is competent, the crew's sea experience and experience in handling a vessel of the type and size involved is considered. See Horn v. Cia de Navegacion Fruco, 404 F.2d 422, 431 (5th Cir. 1968)(considering the amount of sea experience of the crew

---

[4]Plaintiff also argues that Defendant breached the absolute warranty of seaworthiness because Sherrin's license had expired. The Court rejects this argument, because a genuine issue of material fact exists as to whether Sherrin's license had expired at the time that the policy became effective. Instead, it appears that his license may have expired during the trip, because when he was asked the date of the expiration of his license during his deposition, Sherrin responded "I can't be certain. It had–it expired while we were underway on the Jubilee." (Doc. No. 49, Ex. B, p. 80).

7

when determining whether the vessel was seaworthy); Acadia, 151 F. Supp.2d at 119-20 (considering the crew's experience in handling a vessel of the type and size involved when determining whether the vessel was seaworthy); Empire Seafoods, Inc. v. Anderson, 398 F.2d 204, 210 (5th Cir. 1968)(considering the captain's experience in navigating inland waters and his familiarity with the Inter-Coastal Waterway of Florida when determining whether the vessel was seaworthy).  In the instant case, as described below, no one other than Sherrin had experience with a paddlewheel boat, and no one other than Sherrin had experience in the Gulf of Mexico.

When the JUBILEE left Minnesota, the crew consisted of Sherrin and Defendant, as well as Defendant's friends, Ralph Peregory, Chris Schreech, Jack Dove, and Jane Young.  (Doc. No. 49, Ex. A, p. 66).  When the JUBILEE reached San Destin, Florida, Defendant's friend, William Webb, joined as a crew member.  (Doc. No. 49, Ex. A, p. 122).  To Defendant's knowledge, no one other than Sherrin had any experience on a paddlewheel boat.  (Doc. No. 49, Ex. A, p. 83). Instead, the experience of the crew, with the exception of Sherrin, was limited to recreational small boating on the inland waterways around the Potomac River and the Chesapeake Bay.

Jane Young was brought along to cook and clean.  (Doc. No. 49, Ex. A, p. 69). Chris Schreech's prior boat experience consisted of a small motor boat and his father's inboard/outboard boat when he was younger.  (Doc. No. 49, Ex. F, p. 13-14).  He had no experience on the open sea, and he had only ever been three miles off the shore.  (Doc. No. 49, Ex. F, p. 14).  His boating experience was confined to the Potomac River and once on the Chesapeake.  (Doc. No. 49, Ex. F, p.15-16).

Before the JUBILEE, the largest boat Jack Dove piloted was a 32-33 foot cabin cruiser, and he had never taken a boat out to the open waters of the ocean.  (Doc. No. 49, Ex. G, p. 11-

8

14). His boating experience was limited to the Potomac River and Chesapeake Bay. (Doc. No. 49, Ex. G, p. 13-14).

Ralph Peregory previously owned several pleasure crafts and sailed them in the Potomac River and Chesapeake Bay area. (Doc. No. 49, Ex. E, p. 12, 14). His first exposure to a paddlewheel boat was the JUBILEE. (Doc. No. 49, Ex. E, p. 19).

William Webb previously owned pleasure crafts. (Doc. No. 49, Ex. H, p.15). He mainly traveled the Chesapeake Bay. (Doc. No. 49, Ex. H, p. 16). He had no experience on the intercoastal waterways and no experience on the Gulf of Mexico (except sport fishing once on a charter boat). (Doc. No. 49, Ex. H, p. 27).

After considering the crew's sea experience and experience in handling a vessel of the type and size involved, the Court finds that the crew was not qualified, since no one other than Sherrin had experience with a paddlewheel boat, and no one other than Sherrin had experience in the Gulf of Mexico. As such, the Court finds that Defendant breached the absolute warranty of seaworthiness by failing to have a competently crewed vessel. Accordingly, the Court grants summary judgment in favor of Plaintiff on its breach of absolute warranty of seaworthiness claim (Count V).

### D.  Negative Implied Warranty of Seaworthiness

Plaintiff also argues that Defendant breached the negative implied warranty of seaworthiness. Federal maritime law implies the negative implied warranty of seaworthiness into marine insurance policies. Employers Ins. of Wausau, 978 F.2d at 1431. Under the negative implied warranty of seaworthiness, "the insured promises not to knowingly send a vessel to sea in an unseaworthy condition." Id. at 1431-32.

Plaintiff contends that Defendant breached the negative implied warranty of seaworthiness by, among other things, allowing the JUBILEE to be crewed with an incompetent crew. For reasons stated above regarding Defendant's breach of the absolute warranty of seaworthiness, the Court finds that Defendant breached the negative implied warranty of seaworthiness by failing to have a competently crewed vessel. Accordingly, the Court grants summary judgment in favor of Plaintiff on its breach of the negative implied warranty of seaworthiness claim (Count VI).

## IV. Conclusion

For the reasons stated above, the Court finds that Plaintiff is entitled to summary judgment. As a result, the Court declares that Defendant's claim regarding the sinking of the JUBILEE is not covered under the policy, and Plaintiff has no responsibility to Defendant under the policy for the sinking of the JUBILEE. Accordingly, it is ORDERED AND ADJUDGED that:

(1) The Clerk is directed to **STRIKE** Defendant's Affidavit of Tommy Vanacor (Doc. No. 57) filed in support of his motion for summary judgment, since it is not notarized.

(2) Plaintiff's Motion for Summary Judgment (Doc. No. 49) is **GRANTED**.

(3) The Court hereby declares that Defendant's claim regarding the sinking of the vessel JUBILEE is not covered under the policy and that Plaintiff has no responsibility to Defendant under the policy for the sinking of the vessel JUBILEE.

(4) The Clerk is directed to enter judgment in favor of Plaintiff on Counts II, III, IV, V, and VI of Plaintiff's Complaint. The Clerk is directed to enter judgment in favor of Plaintiff/Counterclaim Defendant on Defendant's Counterclaim.

(5) Defendant's Motion for Summary Judgment (Doc. No. 48) is **DENIED**.

(6) The Clerk is directed to terminate all pending motions and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 25th day of July, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

11